IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EARNEST EASTER, individually and on behalf of those similarly situated, | Civil Action No.: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| SAGE TITLE GROUP LLC, d/b/a SAGE PREMIER SETTLEMENTS, DAWN ALIMONTI, and DEBORAH MARTINELLI, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Earnest Easter ("Easter"), by and through his undersigned counsel, on his own behalf and on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure, states:

### STATEMENT OF THE CASE

1. This case is about the practice of Defendant Sage Title Group LLC d/b/a Sage Premier Settlements ("Sage Premier") of charging and collecting notary fees that exceed the fees a notary public may charge under applicable State law.

### JURISDICTION AND VENUE

2. Easter is a resident of Lansdale, Pennsylvania.

3. Sage Premier is a Maryland limited liability company, and its registered office is located at CT Corporation System, 600 N. Second Street, Suite 401, Harrisburg, Pennsylvania 17101.

4. Dawn Alimonti ("Alimonti") is a notary public employed by Sage Premier and on information and belief a resident of Bristol, Pennsylvania.

5. Deborah Martinelli ("Martinelli") is Regional Vice President of Sage Premier and on information and belief a resident of Royersford, Pennsylvania

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2)(A), in that this is a "civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of Plaintiff is a citizen of a State different from any Defendant." *Id*., 28 U.S.C. § 1367.

7. This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d) because: (a) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; (b) the proposed Class consists of more than 100 Class members; (c) it is a class action in which any member of a class of plaintiffs is a citizen of a State different from that of defendant; and (d) none of the exceptions under the subsection apply to this action.

8. This Court has supplemental jurisdiction over the violation of 57 Pa.C.S. § 301, *et seq.*, 73 Pa.C.S. § 201-1, *et seq.*, and claims of unjust enrichment as well as any other state statutory and common law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction over pendant state law claims).

9. This Court has both general and specific personal jurisdiction over Sage Premier, Alimonti, and Martinelli ("Defendants") because the Defendants have conducted, and continue to conduct, substantial business in the State of Pennsylvania and Montgomery County.

10. Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred within this judicial district and Defendants conduct

substantial business within this judicial district.

## STATUTORY FRAMEWORK

11. The Pennsylvania Department of State appoints and commissions individuals to serve as notaries public throughout the Commonwealth of Pennsylvania.

12. Each notary public must take an official oath of office to faithfully perform the duties of the office under the laws of the Commonwealth of Pennsylvania.

13. Each notary public must keep a journal on a tangible medium or an electronic format of that person's notarial acts, and the journal must include the date and time of the notarial act, a description of the type of notarial act, and the fee charged by the notary public.

14. Notaries public in Pennsylvania are governed by the Revised Uniform Law on Notarial Acts (RULNA), 57 Pa.C.S.A. 300, et seq., and applicable State Regulations, and the fee charged for performing notarial acts may not exceed the fees authorized by 4 Pa. Code § 161.1.

15. A notary public in Pennsylvania may not charge more than $5.00 for notarizing all signatures executing an affidavit (no matter how many signatures); $5.00 for notarizing a signature executing a certificate or verification; and $5.00 for notarizing a signature executing an acknowledgment and $2.00 for notarizing each additional name in executing acknowledgments.

16. A notary's employer is liable for damages if the notary was acting within the scope of the notary's employment or agency and the employer consented to the notary's actions.

## FACTUAL BACKGROUND

17. On or about September 30, 2022, Easter closed on purchasing his residential real estate purchase in Pennsylvania at 1221 Browning Court, Lansdale, Pennsylvania 19446. As part of the mortgage, Easter was given a Closing Disclosure that itemized the closing costs associated with the real estate mortgage refinance. The Loan Costs in the Closing Disclosure at line 5 in

section C designated Services Borrower Did Shop For shows that Alimonti charged Easter $52 as a notary fee and Easter paid the fee.

18. A Closing Disclosure is a form issued by the Consumer Financial Protection Board, created by the Frank-Dodd Wall Street Reform and Consumer Protection Act, 12 U.S.C. §5301, *et seq.*, and is mandated for use in all closed-end consumer credit transactions secured by real property, including purchase money loans, refinances, and loans secured by 25 acres or less.

19. On information and belief, the only notarial service performed by Sage Premier's notary public was the acknowledgment of Easter's signature on the mortgage and signature affidavit. A signature affidavit is a form that allows anyone to compare a person's notarized signature to that person's signatures appearing in the closing documents. No other signature in the closing documents is notarized. This is typical of residential mortgage refinances involving one borrower. For residential mortgage refinances involving two borrowers, the notary public typically notarizes the signature of the borrowers on the mortgage and signature affidavit.

20. On information and belief, the only notarial service performed by Sage Premier's notary public at the closing of a residential real estate purchase is the acknowledgment of the buyer's signature on the mortgage and signature affidavit. No other signature in the closing documents of a residential real estate purchase is notarized. This is typical of residential real estate purchases and mortgage refinances involving one buyer. For residential mortgage closings involving two buyers, the notary public typically notarizes the signature of the buyers on the mortgage and signature affidavit.

21. On information and belief, Sage Premier established a company policy of overcharging, collecting, and receiving fees for notary public services in excess of the fees fixed by the Secretary of the Commonwealth of Pennsylvania.

22. On information and belief, at all times material hereto, Alimonti acted on her own behalf and as a notary public of Sage Premier and in the scope of her employment with the company in actively participating in the wrongful injury-producing conduct complained of by Easter as set forth herein.

23. A notary's employer is liable for damages if the notary was acting within the scope of her employment and the employer consented to the employee's actions.

24. On information and belief, at all times material hereto, Martinelli acted on her own behalf and as Regional Vice President or other corporate officer of Sage Premier in actively participating in the wrongful injury-producing conduct, by setting policies and/or charges and/or fees complained of by Easter as herein set forth.

25. The inflated $52 notary fee in the Closing Disclosure that Easter received was a misrepresentation by Defendants.

26. Residential mortgage lenders require the borrower or purchaser to use the services of a notary public in connection with the settlement of the mortgage loan.

27. A reasonable consumer inherently expects fees for settlement services listed in a Closing Disclosure to be bona fide and proper in amount.

28. Easter's mortgage lender required him to use, and Easter had no choice but to use, the services of a notary public in connection with the settlement of his residential mortgage loan.

29. Defendants by their conduct lead Easter to assume the $52 notary fee was bona fide and proper.

30. Plaintiff and members of the class relied on Defendants to, and assumed Defendants would, follow Pennsylvania law in providing notarial services.

31. A notary public acknowledged Easter's signature in connection with the

settlement of his residential mortgage loan.

32. Easter paid the $52 notary fee without objection and thereby relied on Defendants' misrepresentation.

33. Easter's reliance on Defendants to follow Pennsylvania law and on Defendants' misrepresentation was justified.

34. Defendants knew, or should have known, the correct notary charges for signature acknowledgment.

35. Because a notary public is statutorily barred from charging more than $5.00 for notarizing a signature, Sage Premier and its notary public violated the statute by overcharging Easter, at a minimum, by $42.

36. Sage Premier is liable under respondent superior and under statutory authority because the notary public notarized the signatures in the scope of the notary public's employment with Sage Premier during the closing of Plaintiff's loan. Sage Premier knew of the overcharge as it set the notary fee and collected the notary fee. This overcharge is typical of the overcharge of all of Sage Premier notaries public.

37. Easter estimates that, at a minimum, Sage Premier overcharged buyers of residential real estate by at least $42 in transactions involving one borrower or buyer and by at least $32 in those involving two borrowers or buyers.

38. Defendants have directly benefitted from the intentional overcharge at closings as they received more money from Easter and the Class than was statutorily authorized.

## CLASS ACTION ALLEGATIONS

39. Easter brings this action on behalf of himself, and all others similarly situated, pursuant to Rule 23(a), 23(b)(2), and 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

40. Easter seeks to represent a plaintiff class of:

> All persons who purchased, sold or refinanced residential real estate in the State of Pennsylvania within, at a minimum, six years prior to and including the date of filing of this complaint and who were charged by Sage Premier and paid notary fees to a notary public of Sage Premier in connection with such purchase, sale or refinance that were in excess of the fees fixed by the Secretary of the Commonwealth of Pennsylvania ("Class").

41. The following people are excluded from the Class: (a) any judge or magistrate presiding over this action and members of their families; (b) Sage Premier, Sage Premier's parents, subsidiaries, successors, predecessors, affiliates, and any entity in which Sage Premier or its parents have a controlling interest and their current or former employees, officers, and directors; (c) members of the families of Easter, Alimonti, and Martinelli; (d) persons who properly execute and file a timely request for exclusion from the Class; (e) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (f) counsel for Easter and members of the Class and counsel for Sage Premier, Alimonti, and Martinelli, and (g) the legal representatives, successors, and assigns of any such excluded persons.

42. Easter satisfies the numerosity, commonality, typicality, adequacy, and predominance prerequisites for suing as a representative party pursuant to Rule 23 of the Federal Rules of Civil Procedure.

43. **Numerosity**. On information and belief, the Class consists of many thousands of people who are so numerous that it is impractical to join them all in this case. Furthermore, the relatively small amount of damage suffered by each Class member makes filing separate suits by each member economically unfeasible.

44. Members of the Class can be easily identified through Sage Premier's records, and objective criteria permitting self-identification in response to notice, and notice can be

provided through techniques similar to those customarily used in other unjust enrichment claims, statutory violations, unlawful trade practices, and class action controversies.

45. **Typicality**: Easter's claims are typical of the claims of other members of the Class in that Easter and the Class members sustained damages that all arise out of Sage Premier's contracts, agreements, wrongful conduct and misrepresentations, and unlawful practices, and Easter and the Class members sustained similar injuries and damages as a result of Sage Premier's uniform illegal conduct.

46. **Adequate Representation**: Easter is similarly situated to the members of the Class and will fairly and adequately represent all members of the Class. Easter has no relationship with Defendants other than as an adverse party in this case.

47. Proposed counsel for the proposed Class, Jonathan F. Andres of Jonathan F. Andres, P.C. and D. Aaron Rihn of Robert Peirce & Associates, P.C., are experienced and knowledgeable about this type of litigation and will fairly and adequately represent the interest of the proposed Class.

48. No unusual difficulties are anticipated in the management of this action and the Class as a class action.

49. **Commonality and Predominance**. There are numerous questions of law and facts common to the members of the proposed Class, and these questions predominate over any questions of law or facts that may affect individual members of the Class.

50. The claims raised by Easter are typical of those of the other members of the Class.

51. Common questions of law and facts applicable to the Class include, but are not necessarily limited to, the following:

    a. Whether Defendants routinely overcharged the Class members for notarial services;

b. Whether Defendants' conduct and overcharge constitutes a violation of the notary public law;

c. Whether Defendants collected, took, or received monies in Sage Premier's possession and belonging to Easter and the Class and wrongfully converted such monies to its own use and benefit;

d. Whether the overcharge amounts to unjust enrichment of Sage Premier;

e. Whether Easter and the Class justifiably relied on Defendants' conduct or representation;

f. Whether Easter and the Class were damaged as a proximate cause or result of Defendants' conduct;

g. Whether Easter and the Class are entitled to rescission, restitution, or other relief;

h. Whether Defendants' conduct and overcharge constitutes deceptive conduct which creates a likelihood of confusion or of misunderstanding;

i. Whether any Defendant acted with malice and/or reckless disregard for the law and rights of Easter and the Class necessary for treble damages; and,

j. Whether Easter and the Class are entitled to any such further relief as the Court deems appropriate.

52. **Superiority**. A class action is superior to other available methods for the fair and efficient resolution of this controversy as joinder of all parties in impracticable. A class action is superior to individual litigation because: (a) the amount of damages available to individual plaintiffs are insufficient to make litigation addressing Defendants' conduct economically feasible in the absence of the class action procedure; (b) individualized litigation would present a potential for inconsistent or contradictory judgments and increases the delay and expense to all

parties and the court system; and (c) the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

53. In addition, class certification is appropriate under Rule 23(b)(1) or (b)(2) because: (a) the prosecution of separate actions by the individual members of the proposed Class would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendants; (b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and (c) Defendants have acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief described herein appropriate with respect to the proposed Class as a whole.

54. The damages suffered by the individual Class members will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual Class members to obtain effective relief from the Defendants' misconduct. Even if Class members could sustain such individual litigation, it still would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

55. On information and belief, based on publicly available information, Easter alleges that the total amount in controversy exclusive of fees, costs, and interest, based on the estimated number of real estate purchases by members of the Class during the proposed Class period, exceeds $5,000,000.

## COUNT I
## VIOLATION OF PENNSYLVANIA'S REVISED UNIFORM LAW
## ON NOTARIAL ACTS (RULNA 57 PA.C.S. § 301, et seq.)

56. Plaintiff incorporates by reference all allegations in the Complaint.

57. Under Pennsylvania law, persons are prohibited from charging more than $5.00 for notarizing a signature.

58. By charging a fee for notarial acts higher than the statutory maximum, Sage Premier has violated 57 Pa.C.S.A. 329.1 and 4 Pa. Code 161.1. Sage Premier therefore is liable for damages to all members of the Class to whom the company charged excessive fees.

59. By personally and actively participating in the company policy of charging a fee for notary public service higher than the statutory maximum, Alimonti has violated the statute and regulation. Alimonti therefore is individually liable for damages to all members of the Class to whom she participated with Sage Premier in charging excessive fees.

60. By personally and actively participating in the establishment of a company policy of charging a fee for notary public service higher than the statutory maximum, Martinelli has violated the statute and regulation. Martinelli therefore is individually liable for damages to all members of the Class to whom she participated with Sage Premier in charging excessive fees.

61. The conduct of Defendants was willful, wanton, malicious, and done with a reckless disregard for the rights of Easter and the Members of the Class.

WHEREFORE, Plaintiff Earnest Easter, individually and on behalf of each member of the proposed Class prays the Court grants the following relief:

    a.    Enter an order certifying this action as a class action consisting of all persons who purchased, sold or refinanced the purchase of residential real estate in Pennsylvania and were overcharged for notarial services by Defendants from six years before this complaint was filed to the date of judgment;

    b.    Enter an order appointing Easter as representative of the Class and appointing Jonathan Andres of Jonathan F. Andres, P.C. and D. Aaron Rhin of Robert Peirce & Associates, P.C. counsel for the Class;

    c.    Enter judgment and award of actual damages incurred by Plaintiff and the Members of the Class he seeks to represent as a result of the wrongful acts complained of, including an award to Easter for his time and effort in the prosecution of this case, along with pre-judgment and post-judgment interest at the maximum rate allowed by law against Sage Premier, Alimonti, and Martinelli, jointly and severally;

    d.    Enter judgment and award of punitive damages to Plaintiff and the Members of the Class he seeks to represent; and,

    e.    Award Plaintiff reimbursement of costs and expenses incurred in pursuing this civil action, require Defendants to pay the costs and expenses of Class notice and claim administration, and grant such further relief as the Court may find proper under the premises.

## COUNT II
## UNJUST ENRICHMENT

62.    Plaintiff incorporates by reference all allegations in the Complaint.

63.    Defendants were or should have been aware of the statutory limitation on notary fees.

64.    Defendants knew that persons who purchased, sold or refinanced the purchase of residential real estate in Pennsylvania were not generally aware of the statutory limitations on notarial fees.

65. Defendants took advantage of the ignorance of such persons and overcharged them for services.

66. Sage Premier was unjustly enriched by collecting more money for its services and services of notaries public it employed than was statutorily entitled. The excessive fees collected by Defendants should be returned to Easter and the Class members.

67. Alimonti personally and actively participated in the establishment of a company policy of charging a fee for notary public service higher than the statutory maximum and, therefore, she is individually liable for damages to all members of the Class caused by Sage Premier's unjust collection of excessive fees that should be returned to Easter and the Class members.

68. Martinelli personally and actively participated in the establishment of a company policy of charging a fee for notary public service higher than the statutory maximum and, therefore, she is individually liable for damages to all members of the Class caused by Sage Premier's unjust collection of excessive fees that should be returned to Easter and the Class members.

WHEREFORE, Plaintiff Earnest Easter, individually and on behalf of each member of the proposed Class prays the Court grants the following relief:

    a. Enter an order certifying this action as a class action consisting of all persons who purchased, sold or refinanced the purchase of residential real estate in Pennsylvania and were overcharged for notarial services by Defendants from six years before this complaint was filed to the date of judgment;

    b. Enter an order appointing Easter as representative of the Class and appointing Jonathan Andres of Jonathan F. Andres, P.C. and D. Aaron Rhin of Robert Peirce & Associates, P.C. counsel for the Class;

    c.    Enter judgment and award of actual damages incurred by Plaintiff and the Members of the Class he represents as a result of the wrongful acts complained of, including an award to Easter for his time and effort in the prosecution of this case, along with pre-judgment and post-judgment interest at the maximum rate allowed by law against Sage Premier, Alimonti, and Martinelli, jointly and severally;

    d.    Enter judgment and award of punitive damages to Plaintiff and the Members of the Class he seeks to represent; and,

    e.    Award Plaintiff reimbursement of costs and expenses incurred in pursuing this civil action, require Defendants to pay the costs and expenses of Class notice and claim administration, and grant such further relief as the Court may find proper under the premises.

## COUNT III
### VIOLATION OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (UTPCPL 73 PA.C.S.A. 201-1 et seq.)

69.    Plaintiff incorporates by reference all allegations in the Complaint.

70.    The overcharging of notarial fees is a deceptive act or practice in the conduct of trade or commerce, as those terms are used and defined in the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Consumer Protection Law"), 73 Pa.C.S. § 201-1, *et seq*.

71.    Defendants engaged in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding that includes and/or may include, but is not necessarily limited to, the following:

    a.    Charging and collecting a fee disclosed as Notary Fee for service(s) not identified in the notarial services listed in 4 Pa. Code § 161.1;

    b.    Failing to disclose if the fee charged and disclosed as a Notary Fee was for services or activities not listed in 4 Pa. Code § 161.1;

       c.       Failing to itemize and charge separately for services or activities not listed in 4 Pa. Code § 161.1;

       d.       Charging and collecting a fee for notarizing a signature without mutual agreement between the notary public notarizing such signature and Sage Premier that the fee did not belong to the notary public; and,

       e.       Charging and collecting a fee for notarizing a signature when Sage Premier did not employ the notary public who notarized the signature.

72. Sage Premier violated the Consumer Protection Law by charging Easter and the members of the Class excessive notary fees during the purchase, sale or refinance of residential real estate in Pennsylvania.

73. By personally and actively charging and participating in Sage Premier's policy of charging a fee for notary public service higher than the statutory maximum and the fraudulent or deceptive conduct alleged herein, Alimonti has violated the Consumer Protection Law. Therefore, Alimonti is individually liable for damages to all members of the Class to whom she participated with Sage Premier in charging excessive fees.

74. By personally and actively participating in the establishment by Sage Premier of a company policy of charging a fee for notary public service higher than the statutory maximum and the fraudulent or deceptive conduct alleged herein, Martinelli has violated the Consumer Protection Law. Therefore, Martinelli is individually liable for damages to all members of the Class to whom she participated with Sage Premier in charging excessive fees.

75. Easter and each Member of the Class has thereby been damaged.

76. As a result of Defendants' deceptive acts, Easter and the Members of the Class are entitled to reimbursement of the overcharges.

77. The conduct of Defendants was willful, wanton, malicious, and done with a reckless disregard for the rights of Easter and the Members of the Class.

WHEREFORE, Plaintiff Earnest Easter individually and on behalf of each member of the proposed Class prays the Court grants the following relief:

a. Enter an order certifying this action as a class action consisting of all persons who purchased, sold or refinanced the purchase of residential real estate in Pennsylvania and were overcharged for notarial services by Defendants from six years before this complaint was filed to the date of judgment;

b. Enter an order appointing Easter as representative of the Class and appointing Jonathan Andres of Jonathan F. Andres, P.C. and D. Aaron Rhin of Robert Peirce & Associates, P.C. counsel for the Class;

c. Enter judgment and award of actual damages incurred by Plaintiff and the Members of the Class he seeks to represent as a result of the wrongful acts complained of, including an award to Easter for his time and effort in prosecution of this case, along with pre-judgment and post-judgment interest at the maximum rate allowed by law against Sage Premier, Alimonti, and Martinelli, jointly and severally;

d. Enter a judgment in favor of Easter and the members of the Class for treble damages in the sum of three times the amount of the notarial overcharges against Sage Premier, Alimonti, and Martinelli, jointly and severally;

e. Award Class counsel reasonable attorney's fees and reimbursement of all costs and expenses in pursuing this civil action, require Defendants to pay the costs and expenses of Class notice and claim administration, and grant such further relief as the Court may find proper under the premises.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: September 7, 2023                                  Respectfully submitted,


*/s/ D. Aaron Rihn*
D. Aaron Rihn, Esquire
PA Bar ID No.: 85752
ROBERT PEIRCE & ASSOCIATES, P.C.
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Tel: 412-281-7229
Fax: 412-281-4229
arihn@peircelaw.com

Jonathan F. Andres Esquire (*pro hac* pending)
JONATHAN F. ANDRES P.C.
1127 Hoot Owl Rd.
St. Louis, MO 63005
Tel: 636-633-1208
andres@andreslawpc.com

*Counsel for Plaintiff*